# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY ERIN HARRISON CAMPBELL,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:17-cv-00500-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 19, 21) |

## I.

## INTRODUCTION

Plaintiff Courtney Erin Harrison Campbell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from severe migraines, pituitary tumor, hypothyroidism, ADD, fatigue, agoraphobia with anxiety, and panic attacks.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 14, 15.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on May 1, 2013, alleging disability beginning May 27, 2011. (AR 188-191.) Plaintiff's application was initially denied on July 25, 2013, and denied upon reconsideration on October 3, 2013. (AR 77-82, 85-89.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ"). Plaintiff appeared for a hearing on July 16, 2015. (AR 23-50.) On August 21, 2015, the ALJ found that Plaintiff was not disabled. (AR 7-22.) The Appeals Council denied Plaintiff's request for review on January 30, 2017. (AR 1-4.)

### A.    Hearing Testimony

Plaintiff testified at the hearing on July 16, 2015.[2] (AR 28-43.) She lives in a house with her sixteen year old daughter and her friend also lives there part of the time. (AR 29.) Her mother stays with her too. (AR 29.) She has 2 dogs. (AR 29.) She has a 12th grade education. (AR 30.)

If she has gone to sleep at night, she usually wakes up at 4:00 a.m. and lays in bed for a time. (AR 39.) When she feels that she can get up, she goes into the kitchen and gets something to drink and then goes back to bed. (AR 40.) She does not watch TV or read. (AR 40.) She talks to her mom when she calls. (AR 40.) She talks to her daughter when her daughter comes into her room. (AR 40.) Her daughter is pretty self-sufficient. (AR 40.) She does not cook, so she asks that her friend bring her food. (AR 41.) She has help doing her banking. (AR 41-42.) She does not have any bills. (AR 42.) Her friends help her with banking, buying her food, getting her ready, and taking her to appointments. (AR 42.) She does not have many friends. (AR 42.) Her only friend besides her boyfriend is a friend who she talks to once a year on the phone. (AR 42.) She gets along "fine" with her friends and family. (AR 42.)

She has not worked since May 2011 when she was working at an elementary school as an instructional aide. (AR 31.) She shadowed a child who had problems and tried to keep him out

---

[2] As Plaintiff is only challenging a finding regarding her mental impairments, the Court only discusses the parts of the record relevant to Plaintiff's mental impairments.

of trouble. (AR 31.) She stopped working there because she the school year ended and she had taken a lot of days off due to not feeling good. (AR 31-32.) She was hiding out in the bathrooms at school because she did not want to go into the breakroom with the other adults. (AR 32.) By the time the next school year started, she was feeling worse. (AR 32.) She had worked in 2004 and 2005 in a customer service job on the phone taking appeals and figuring out whether they were approved. (AR 32.) She also has an inactive license in real estate. (AR 31.)

She has a driver's license and she drives once every 3 or 4 weeks. (AR 30.) She drives to the store, but she does not go in herself. (AR 30.) She takes somebody who goes in for her. (AR 30.) She stays in her house most of the time. (AR 30.) She is scared of people and she has anxiety and panic attacks in public places. (AR 30.) She even has anxiety and panic attacks when she is near her neighbor, so she does not go outside if her neighbor is outside. (AR 30.)

She cannot work because she is "out of it" and on her bathroom floor for 15 to 20 days a month. (AR 33.) The day before the hearing she was trying to get some relief from her migraines so she took 11 showers during which she was sitting and laying on the shower floor. (AR 33.) After her headaches, she is weak, shaky, and she struggles and needs help getting ready. (AR 34.) She is awake all night because of her anxiety. (AR 33.) She cannot stay on task and she cannot remember things that people tell her. (AR 33-34.)

She saw Dr. Mocsary, the neurologist, not long before the hearing and he prescribed a different antidepressant which did not work. (AR 36.) Plaintiff passed out with it. (AR 36.) She has been treated by Dr. Barber for her mental health for 4 months. (AR 37.) Dr. Barber increased her Clonazepam. (AR 37.) Dr. Barber was looking into taking over her prescription of Adderall, but Plaintiff has not been taking Adderall for a couple of months at the suggestion of the endocrinologist at UCLA. (AR 37.) Since she started seeing Dr. Barber, she has not had a decrease in anxiety symptoms. (AR 38.)

A vocational expert ("VE"), Cheryl Chandler, also testified at the hearing. (AR 43-48.)

**B.    ALJ Findings**

- Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2015.

- Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of May 27, 2011, through her date last insured of June 30, 2015.

- Through the date last insured, Plaintiff had the following severe impairments: migraine, chronic without aura, intractable and mild cervical spine degenerative disc disease.

- Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- After careful consideration of the entire record, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to lift and carry 50 lbs occasionally and 25 lbs frequently, stand and walk 6 hours, and sit 6 hours in an 8-hour workday. She must avoid concentrated exposure to excessive noise, bright lights, unprotected heights, and fast moving unprotected machinery, and traversing on uneven terrain.

- Through the date last insured, Plaintiff was capable of performing past relevant work as a Claims Clerk. This work did not require the performance of work related activities precluded by Plaintiff's RFC.

- Plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 27, 2011, the alleged onset date, through June 30, 2015, the date last insured.

(AR 12-17.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

1  upheld.").

2                                        **IV.**

3                              **DISCUSSION AND ANALYSIS**

4      Plaintiff raises two issues in this appeal.  Plaintiff argues that the ALJ erred by: (1) failing

5  to find her mental impairments were not severe at step two of the sequential analysis; and (2)

6  failing to develop the record regarding Plaintiff's mental impairments.

7      **A.      Substantial Evidence Supports the ALJ's Finding that Plaintiff's Mental
8              Impairments are Non-Severe**

9      Plaintiff argues that the ALJ erred by finding that her mental impairments were not

10  severe at step two of the sequential analysis.  Defendant counters that substantial evidence

11  supports the ALJ's finding that Plaintiff's mental impairments did not cause more than mild

12  limitations and were not severe.[3]

13      At the step two inquiry, the ALJ is to determine whether the plaintiff has a medically

14  severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "An

15  impairment or combination of impairments is not severe if it does not significantly limit [the

16  claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  As

17  relevant to this social security appeal, basic work activities are defined as "the abilities and

18  aptitudes necessary to do most jobs," for example: "[u]nderstanding, carrying out, and

19  remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision,

20  co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20

21  C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe'

22  only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on

23  an individual's ability to work.' " Smolen, 80 F.3d at 1290 (quoting Yuckert v. Bowen, 841 F.2d

24  303, 306 (9th Cir. 1988)).

25      The ALJ must determine whether an applicant has a medically determinable mental

26  impairment, 20 C.F.R. § 404.1520a(b)(1), rate the degree of functional limitation for four

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [3] The Court notes that Plaintiff did not file a reply.

                                        6

functional areas, 20 C.F.R. § 404.1520a(b)(2), and determine the severity of the mental impairment (in part based on the degree of functional limitation), 20 C.F.R. § 404.1520a(d). The ALJ's decision must include a specific finding as to the degree of limitation in each of the functional areas. 20 C.F.R. § 404.1520a(e)(4).

At step two, the ALJ found:

The claimant's medically determinable mental impairment of attention deficit disorder and agoraphobia without panic disorder do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe. For example, the claimant has not required any significant treatment for these conditions (Exhibits 4F p. 4 and 11F p. 19). In addition, the medical evidence does not support attention deficit disorder allegations because the claimant stated she can drive, shop, do household chores, take care of finances, and care for three children and two dogs (Exhibit 5E).

The undersigned also gives great weight to the State agency psychological consultant's mental assessment (Exhibits 1A, p. 6 and 3A, p. 7) that the alleged mental impairments are non-severe because it is consistent with the record as a whole and there are no mental health treatment records for any psychological problems.

In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant had no limitation. The claimant reported she could attend to her personal care, drive, cook, clean, and shop (Exhibit 5E). In her function report, she stated that her activities of daily living included eating a small breakfast in the morning, showering, dressing, and watching television (Exhibit 5E). Such evidence does not support limitations in activities of daily living.

The next functional area is social functioning. In this area, the claimant had no limitation. The claimant stated she can go out alone and goes out daily one to three days a week. She reported in her function report that she socialized with her family by telephone weekly (Exhibit 5E). These factors support findings of no social limitations.

The third functional area is concentration, persistence, or pace. In this area, the claimant had mild limitation. The undersigned noted that in the claimant's function report, she stated she had no problem managing finances, but had trouble completing tasks and following instructions (Exhibit 5E). She reported problems staying organized, being distracted when trying to complete tasks, and needing to reread written instructions to remember and understand (Exhibit 5E). However, the undersigned further noted at the hearing that the claimant paid attention and responded appropriately throughout her hour-long hearing. These factors support mild limitations in concentration, persistence, and pace.

The fourth functional area is episodes of decompensation. In this area, the claimant had experienced no episodes of decompensation, which have been of extended duration. The record does not show that the claimant has required extended inpatient care for severe psychiatric symptoms. There is no evidence that her depression or anxiety severely diminished her ability to perform daily tasks for a period of two weeks or longer.

Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it was non-severe (20 CFR 404.1520a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process ....

(AR 13.)

First, the Court will discuss the ALJ's findings for the four functional areas of the "paragraph B" criteria.

### 1. Four Functional Areas

Plaintiff did not address the four functional areas in her brief. Defendant asserts that the ALJ properly conducted the "special technique" set forth at 20 C.F.R. § 404.1520a for the four functional areas. The four functional areas are daily activities, social functioning, concentration, persistence, or pace, and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). If the degree of limitation in the first three functional areas is none or mild and the fourth functional area is none, the impairment is generally considered not severe unless the evidence indicates that there is more than a minimal limitation in your ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

### a. daily activities

The ALJ found that Plaintiff's mental impairments did not limit her daily activities. (AR 13.) The ALJ pointed out that Plaintiff reported that she could attend to her personal care, drive, cook, clean, shop, eat a small breakfast in the morning, shower, dress, and watch TV. (AR 13.)

Plaintiff contends that the ALJ's characterization of her daily activities is inaccurate.[4] Plaintiff asserts that her daily activities are limited because she lays down most of the day, she

---

[4] Although Plaintiff did not specifically address this functional area, Plaintiff did address the ALJ's finding that Plaintiff's activities do not support an allegation of ADD.

can get the mail, her son usually gets take-out dinner, she does not take care of pets, she can prepare daily meals that take 0 to 5 minutes to prepare, she can clean a toilet every couple of weeks, she can do laundry off-and-on once a month, and she limits her driving to short distances. Defendant argues that Plaintiff's statements that she is limited contradict other statements by Plaintiff and Plaintiff's mother. Defendant asserts that this creates a record susceptible to more than one possible interpretation and the ALJ's interpretation should be upheld because it is rational.

In Plaintiff's June 26, 2013 functional report, she stated that her conditions limit her ability to stand, sit, remember, complete tasks, and concentrate. (AR 257.) She indicated that she does not take care of any other people or animals. (AR 258.) She is able to handle her personal care although she has some issues with personal care. (AR 258.) She has to sit to get dressed to avoid standing and bending, she takes baths and quick showers to avoid standing, the heat from the shower causes her to black out, she requires rest breaks when caring for her hair, she shaves less often and while sitting to avoid bending, she is not hungry most of the time because she is nauseous, and she requires rest breaks while caring for her personal needs and grooming. (AR 258.) She prepares her own meals on a daily basis that take less than 5 minutes to make. (AR 259.) She has difficulty concentrating and staying organized to cook a full meal. (AR 259.) She cleans toilets for 3 minutes every couple of weeks and she does laundry off and on with breaks one day a month. (AR 259.)

She goes outside 1 to 3 days per week and she can drive a car and ride as a passenger in a car. (AR 260.) She limits her driving to short distances because she has trouble sitting, concentrating, and seeing. (AR 260.) She shops in stores, but her son does most of the household shopping because she has problems standing and walking in the store and the lights in the store increase her head pain. (AR 260.) She watches TV daily, but she usually does not pay attention to it or she just listens to it because it is hard for her to concentrate. (AR 261.)

On June 7, 2013, Plaintiff's mother completed a third party function report. (AR 246-254.) Plaintiff's mother stated that Plaintiff had an increase in the number of migraines and would miss work and she became anxious about missing so many days. (AR 246.) Plaintiff

cares for her 2 daughters and one son. (AR 247.) She stated that Plaintiff and Plaintiff's children take care of 2 dogs. (AR 247.) Plaintiff has no problem with personal care and dos not need reminders to take care of personal needs or to take her medicine. (AR 247-248.) Plaintiff prepares her own meals multiple days per week when she is migraine free. (AR 248.) However, Plaintiff is unable to cook or read during migraine episodes. (AR 248.) When she is not having migraine episodes, she can clean, do laundry, and do normal household duties without any help or encouragement. (AR 248.) If no migraine, she goes outside on a daily basis and she can go out alone. (AR 249.) She drives, shops in stores and by computer, and is able to handle her finances. (AR 249.) Plaintiff's hobbies include going on the computer, reading books, cooking, and watching TV. (AR 250.) She does these activities well on days she does not have a migraine. (AR 250.)

Although Plaintiff offers a different interpretation of the evidence, where the ALJ's interpretation is rational, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. <u>See Burch</u>, 400 F.3d at 679. Therefore, the Court finds there is substantial evidence in the record to support the ALJ's finding that Plaintiff's mental impairments do not cause any limitation for her activities of daily living.

**b.    social functioning**

The ALJ found no limitation in social functioning. The ALJ pointed out that Plaintiff stated that she can go out alone, she goes out daily 1 to 3 days a week, and she socialized with her family by telephone weekly. (AR 13.)

Plaintiff stated in her function report that she goes outside 1 to 3 days per week and she can both drive a car and ride in a car. (AR 260.) She can go out alone, but she usually has someone with her when she goes out and she does not go long distances alone. (AR 260.) She limits her driving to short distances because she has trouble sitting, concentrating, and seeing. (AR 260.) She shops in stores, but her son does most of the household shopping because she has problems standing and walking in the store and the lights in the store increase her head pain. (AR 260.) She states that she has problems getting along with family, friends, neighbors, or others. (AR 262.) However, she spends time with her family daily and talks to her family on the

1   phone weekly.  (AR 261.)  She has problems talking because she has problems finding the words

2   she wants to say and her voice gets shaky the more fatigued she is.  (AR 262.)

3          Plaintiff's mother stated that Plaintiff spends time with others and she talks on the phone,

4   goes shopping, and uses the computer with her children when she does not have a migraine.  (AR

5   250.)  During the hearing, Plaintiff stated that she gets along fine with her family, her boyfriend,

6   and a friend that she talks to once a year on the phone.  (AR 42.)  During her February 21, 2015

7   visit with Dr. Beber, Plaintiff stated that she has a fair relationship with her father, good to fair

8   relationship with her mother, and a fair to poor relationship with her siblings.  (AR 490.)  She is

9   in a good relationship with her boyfriend of 7 years and they live together.  (AR 491.)  She has a

10  good relationship with her 3 children.  (AR 491.)  She "kind of" has a few friends who she has a

11  distant relationship with.  (AR 491.)

12         Therefore, the Court finds that there is substantial evidence to support the ALJ's finding

13  that Plaintiff's mental impairments do not limit her social functioning.

14         **c.     concentration, persistence, or pace**

15         The ALJ found only mild limitations in maintaining concentration, persistence, or pace.

16  (AR 13-14.)  The ALJ noted that Plaintiff said she that she had no problem managing finances,

17  but she had trouble completing tasks and following instructions.  (AR 13.)  She reported

18  problems staying organized, being distracted when trying to complete tasks, and needing to

19  reread written instructions to remember and understand.  (AR 13.)  However, the ALJ found that

20  Plaintiff paid attention at the hearing and responded appropriately throughout her hour-long

21  hearing.  (AR 13-14.)

22         Plaintiff stated in her function report that she can manage her finances.  (AR 261.)  She

23  lacks short term memory and she has to write things down and be reminded of things.  (AR 262.)

24  However, she also stated that she does not need any reminders to take care of personal care.  (AR

25  259.)  She gets distracted when trying to complete tasks and she has problems staying organized

26  to get tasks finished.  (AR 262.)  It takes her a long time to complete tasks because she has to

27  work slowly and take frequent breaks.  (AR 262.)  She lacks concentration due to head pain,

28  dizziness, and fatigue and can only pay attention for about a minute.  (AR 262.)  It takes her a

long time to process information due to her lack of memory and concentration. (AR 262.) She rereads written instructions and needs spoken instructions repeated. (AR 262.)

However, Plaintiff's ability to pay attention and respond appropriately during her hearing support only mild limitations in concentration, persistence, and pace. Plaintiff's hearing was from 11:28 a.m. to 12:19 p.m. on July 16, 2015. (AR 25-49.) Plaintiff testified during the almost hour-long hearing and there is no indication during the hearing that she had issues paying attention. (AR 25-49.) While Plaintiff indicated that she did not like microphones, that she was not feeling well, and that she could not remember to not say um-hum, she responded appropriately throughout the hearing. (AR 25-49.) She was focused enough during the hearing to interrupt the vocational expert's testimony when she disagreed with the vocational expert's opinion. (AR 46.)

Therefore, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff has mild limitations from mental impairments in concentration, persistence, or pace.

### d.    decompensation

The ALJ found that Plaintiff had no episodes of decompensation of extended duration. (AR 14.) The ALJ noted that the record does not show that Plaintiff has required extended inpatient care for severe psychiatric symptoms and there is no evidence that her depression or anxiety severely diminished her ability to perform daily tasks for a period of 2 weeks or longer. (AR 14.)

Under the listings, episodes of decompensation are defined as "exacerbations or temporary increase in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relations, or maintaining concentration, persistence, or pace." 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(C)(4). There is no evidence of any episodes of decompensation in the record. There is no evidence that Plaintiff has required extended inpatient care for psychiatric symptoms. Therefore, there is substantial evidence supporting the ALJ's finding that Plaintiff has not had any episodes of decompensation that have lasted for an extended duration.

The ALJ found that Plaintiff had mild limitations in maintaining concentration,

persistence, or pace, no limitations in social functioning and daily activities, and no episodes of decompensation. These findings support Plaintiff's mental impairment being not severe. See 20 C.F.R. § 404.1520a(d)(1). The ALJ also determined that Plaintiff's mental impairments are not severe because of the lack of significant treatment, the fact that Plaintiff's daily activities do not support her allegations of ADD, and the state agency psychological consultants opined that her mental impairments are non-severe.

### 2. Lack of Significant Treatment

The ALJ, pointing to Plaintiff's October 2, 2012 treatment note and February 21, 2015 treatment note, found that Plaintiff has not required any significant treatment for her mental impairments. (AR 13, 337, 495.) Plaintiff argues that she did receive significant treatment for her mental conditions because she was treated by Dr. Jorge H. Beber. (AR 478-495.) Plaintiff, citing Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996), contends that mental impairments are underreported and undertreated. Defendant asserts that Dr. Beber's treatment notes do not establish a severe impairment.

The record shows that Plaintiff only saw Dr. Beber on two occasions.[5] Dr. Beber initially saw Plaintiff on February 21, 2015. (AR 481-495.) Plaintiff reported that she had anxiety, agoraphobia, panic, social avoidance, and depression because of the anxiety. (AR 483.) She said her only prior psychiatric diagnosis was "ADD- inattentive" 16 years before. (AR 485.) She reported feeling like she is encased in cement psychologically where her body does not respond to her mind's desire to do things. (AR 483.) She says she has been experiencing this for years and that her symptoms have been getting worse. (AR 484.) She says that she has received medication and counseling for her mental health symptoms that have not been helpful, but also somewhat helpful. (AR 484.) She has been taking Clonazepam for a few years and it helps a bit. (AR 484.) She has been taking Adderall for many years and it helps. (AR 484, 487.) She has never seen a psychiatrist before and she has not seen a therapist for herself, but she has seen a therapist with her daughter. (AR 484-485.) She has never visited the emergency room for her

---

[5] Plaintiff missed her appointment without calling on May 23, 2015, and she canceled and did not reschedule her appointment on May 29, 2015. (AR 478-479.)

psychiatric symptoms.  (AR 485.)

During the mental status examination, it was noted that Plaintiff was casually dressed with good hygiene and she was cooperative, but guarded and tense.  (AR 482.)  Plaintiff had restless motor activity with tremors, downcast and evasive eye contact, soft speech, anxious mood, appropriate affect, organized thought process, helplessness for thought content, no issues with perceptions, poor concentration, intact memory, no suicidal or homicidal ideas, good insight, good judgment, good impulse control, and average intelligence.  (AR 482.)  She was alert and oriented.  (AR 482.)  Dr. Beber found that she had agoraphobia without panic disorder, social phobia, and dysthymia.  (AR 495.)   She was prescribed Alprazolam and continued on Adderall.  (AR 495.)  She was told to follow-up in 4 weeks.  (AR 495.)

Dr. Beber saw Plaintiff again on March 28, 2015.  (AR 480.)  Plaintiff told Dr. Beber that she wanted to try a different medication for her anxiety.  (AR 480.)  The Alprazolam made her nauseous, it did not work for long, and she felt more anxious before her next dose was due.  (AR 480.)  She liked the Clonazepam better, but she took it at bedtime to sleep better and then would feel anxious during the day.  (AR 480.)  Dr. Beber noted that Plaintiff's primary care provider continued to write a prescription for Adderall "for now."  (AR 480.)  During the mental status examination Plaintiff had a clean appearance, was cooperative and oriented, and she had a restless psychomotor with tremors, soft speech, anxious mood, appropriate affect, decreased eye contact that was downward, lingering thought process, no hallucinations and delusions, good insight, good judgment, and fair concentration.   (AR 480.)   Plaintiff was diagnosed with agoraphobia that had not improved.  (AR 480.)  She was given a refill for Clonazepam and told to follow-up in 2 months.  (AR 480.)

During Plaintiff's April 7, 2015 consultation for migraines, she stated that her "severe anxiety problem" was controlled to some extent by Clonazepam.  (AR 497.)  During the physical examination, she was not in acute distress, no issues with her appearance, oriented to person, place, and time, normal memory, normal thought process, normal attention span, normal judgment and insight, and normal mood and affect.  (AR 498.)

As Plaintiff points out, the Ninth Circuit recognized in <u>Nguyen</u> that "it is common

knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness" and cautioned that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen, 100 F.3d at 1465 (citations omitted). However, this is not a situation where Plaintiff was unaware of her potential mental illness or any failure to secure mental health treatment was attributable to her mental illness. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (finding that an ALJ can look to the level or frequency of treatment to discredit a plaintiff when there was no medical evidence that plaintiff's resistance to treatment was attributable to the mental impairment rather than personal preference). In fact, Plaintiff sought treatment for her mental health impairments prior to seeing Dr. Beber in 2015. However, her treatment was not significant.

On May 3, 2011, Plaintiff requested a refill of her Adderall and Lunesta that was previously prescribed by a psychiatrist and Plaintiff was given a prescription for Adderall and Lunesta. (AR 310-311.) On June 3, 2011, it was noted that Plaintiff was taking Adderall. (AR 306.) On October 2, 2012, the only mental impairment that Plaintiff was diagnosed with was ADD and she was prescribed Adderall. (AR 337.) Plaintiff received a refill of Clonazepam on November 19, 2012, and a refill of Adderall on January 4, 2013. (AR 452, 463.) On January 25, 2013, and April 16, 2013, it was noted that Plaintiff was taking Adderall. (AR 375, 377.) On October 28, 2014, Plaintiff's Adderall was refilled. (AR 419.) On October 30, 2014, Plaintiff stated that she was taking Clonazepam, but it was ineffective. (AR 419.) In December 2014, she reported that she is afraid when leaving her home and she was referred to a psychiatrist. (AR 413-414.) On January 5, 2015, it was noted that Plaintiff was going to make a psychiatrist appointment. (AR 408.)

The record shows that Plaintiff did receive some mental treatment from 2011 through the time of the hearing, but it was not significant treatment. Therefore, substantial evidence supports the ALJ's finding that Plaintiff has not required significant treatment for her mental impairments.

3.    Daily Activities Do Not Support ADD Allegations

The ALJ found that Plaintiff's daily activities such as driving, shopping, doing household

chores, taking care of finances, and caring for 3 children and 2 dogs do not support her allegations regarding ADD. (AR 13, 257-264.)

Plaintiff stated in her June 26, 2013 function report that she is able to pay her bills, count change, handle a savings account, and use a checkbook/money orders. (AR 261.) She said that her conditions have not affected her ability to handle money. (AR 261.) She can drive a car, but she limits her driving to short distances because she has difficulty sitting, concentrating, and seeing. (AR 260.) The glares and lights make it difficult for her to drive. (AR 260.) She shops in stores, though she her son does most of the household shopping because she has issues standing and walking and with the lights in the store. (AR 260.) She is able to do laundry off and on all day with breaks for one day a month. (AR 259.) She also can clean toilets for 3 minutes every couple of weeks. (AR 259.)

Plaintiff's mother stated in her third party function report that Plaintiff cares for her 3 children and cares for 2 dogs with the help of her children. (AR 247.) Plaintiff's mother stated that when Plaintiff is not having migraine episodes, she can clean, do laundry, and do normal household duties without any help or encouragement. (AR 248.) When Plaintiff does not have a migraine, she goes outside on a daily basis and she can go out alone. (AR 249.) She drives, shops in stores and by computer, and is able to handle her finances. (AR 249.)

Therefore, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's ability to drive, shop, do household chores, take care of finances, and care for 3 children and 2 dogs do not support her ADD allegations.

### 4. State Agency Reviewing Psychological Consultants

The ALJ also considered that Dr. Murillo and Dr. Ikawa, the state agency reviewing psychological consultants, opined that Plaintiff does not have a severe mental impairment. (AR 13.) The ALJ gave great weight to the opinions of Dr. Murillo and Dr. Ikawa because their opinions are consistent with the record as a whole and there are no mental health treatment records for any psychological problems. (AR 13.) The weight to be afforded a non-examining physician's opinion depends upon the degree to which the physician provides supporting explanations for his opinion. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20

C.F.R. § 404.1527(d)(3)).

Plaintiff asserts that the ALJ must consider the record as a whole and the two state agency reviewing physicians did not have Dr. Beber's records to review. Plaintiff also contends that the ALJ incorrectly found there are no mental health treatment records. Defendant argues that the opinions of Dr. Murillo and Dr. Ikawa constituted substantial evidence to support the ALJ's decision because they were experts in Social Security disability evaluation and based their opinion on Plaintiff's records.

While Plaintiff contends that a reviewing physician should be required to review all material records the same way that a vocational expert must assume a complete hypothetical in assessing the availability of work, this is not the standard. The question is whether the record as a whole supports the opinions of Dr. Murillo and Dr. Ikawa that Plaintiff's mental impairments are non-severe. Although the ALJ stated that there are no mental health treatment records for any psychological problems, the ALJ stated several paragraphs earlier in her opinion, that Plaintiff did not have significant treatment. (AR 13.) Any error in this misstatement by the ALJ is harmless, as the ALJ provided another reason to give great weight to the opinions of Dr. Murillo and Dr. Ikawa. Therefore, the Court reviews whether the record as a whole supports the opinions of Dr. Murillo and Dr. Ikawa.

In Plaintiff's social security application, she alleged disability because of severe migraines, pituitary tumor, hypothyroidism, ADD, and adrenal fatigue. (AR 233.) At that time, she was taking Adderall for her ADD. (AR 236.) She described difficulty with concentration, focus, memory, and completing tasks due to her physical conditions. (AR 242.)

On July 17, 2013, Dr. Murillo noted that Plaintiff alleges ADD and takes Adderall, but the prescribing doctor did not respond and there is no diagnosis of ADD established. (AR 55.) Dr. Murillo also noted that there are no other mental allegations. (AR 55.) He found that Plaintiff's activities of daily living are intact as she drives, shops, does household chores, takes care of finances, and cares for 3 children and 2 dogs. (AR 55.) He found no mental medically determinable impairment. (AR 55-56.)

On September 30, 2013, Dr. Ikawa found that Plaintiff's mental impairments are non-

severe and he noted the mention in the past medical history section of Dr. Liu's notes of ADD and anxiety. (AR 66.) Dr. Ikawa found that Plaintiff had no restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, and episodes of decompensation of extended duration. (AR 66.)

While Plaintiff saw Dr. Beber for her mental health issues after the evaluations by Dr. Murillo and Dr. Ikawa, the two visits with Dr. Beber do not call into question the opinions of Dr. Murillo and Dr. Ikawa.[6] During Plaintiff's February 21, 2015 visit with Dr. Beber, she had restless motor activity with tremors, downcast and evasive eye contact, soft speech, anxious mood, appropriate affect, organized thought process, helplessness for thought content, no issues with perceptions, poor concentration, intact memory, no suicidal or homicidal ideas, good insight, good judgment, good impulse control, and average intelligence. (AR 482.) She was alert and oriented. (AR 482.) During the March 28, 2015 visit with Dr. Beber, Plaintiff had a clean appearance, a restless psychomotor with tremors, soft speech, anxious mood, appropriate affect, decreased eye contact that was downward, lingering thought process, no hallucinations and delusions, good insight, good judgment, and fair concentration. (AR 480.) She was oriented and cooperative. (AR 480.)

Plaintiff's other medical visits also support the opinions of Dr. Murillo and Dr. Ikawa. On September 7, 2012, Plaintiff established care with Dr. Falappino and stated that she has been diagnosed with ADD. (AR 465.) On October 2, 2012, Plaintiff saw Dr. Falappino for medication refill and was assessed with several diagnoses, but the only mental one was ADD. (AR 464.) Plaintiff was prescribed Clonazepam and Adderall. (AR 464.) On November 19, 2012, and January 4, 2013, Plaintiff saw Dr. Falappino for medication refill and was assessed with several diagnoses, but the only mental one was ADD. (AR 452, 463.) Plaintiff received a refill of Clonazepam on November 19, 2012, and a refill of Adderall on January 4, 2013. (AR 452, 463.)

On June 12, 2013, Plaintiff saw Dr. Falappino for medication refill, and there is no

---

[6] The Court notes that Plaintiff had already been prescribed Adderall at the time of the evaluations by Dr. Murillo and Dr. Ikawa and that information was in the record that was reviewed.

indication of any psychiatric issues. (AR 449.) On September 23, 2013, Plaintiff saw Dr. Falappino for medication refill, and Plaintiff had normal results during the neurological/psychiatric part of the physical examination. (AR 446.)

On January 10, 2014, February 4, 2014, and June 11, 2014, during the neurological/psychiatric part of the physical examination, Plaintiff's cardinal signs were negative, pupils were equal and reactive to light, and Plaintiff had +1 patellar reflex. (AR 427, 432, 443.) On September 11, 2014, Plaintiff had normal neurological/psychiatric results. (AR 417.) On October 28, 2014, Plaintiff's Adderall was refilled. (AR 419.)

On October 30, 2014, someone in Dr. Falappino's office spoke with Plaintiff about referrals to go to Stanford, to have an MRI, and for Lyrica. (AR 419.) Plaintiff asked what the best way to end her life was and whether taking sleeping pills or slitting her wrists would be less painful. (AR 419.) The medical provider asked Plaintiff what was bothering her, and Plaintiff answered that she was tired of having to deal with being fat and ugly, having panic attacks, and always being in pain. (AR 419.) Plaintiff stated that she was taking Clonazepam, but it was ineffective. (AR 419.)

On December 3, 2014, January 5, 2015, and February 17, 2015, Plaintiff saw Dr. Falappino for physical pain and during the physical examination, Plaintiff had normal neurological/psychiatric results. (AR 399-400, 407-408, 413.) She was referred to a psychiatrist on December 3, 2014. (AR 414.) Plaintiff then saw Dr. Beber in February and March 2015. (AR 480-495.)

During a consultation for migraines on April 7, 2015, Plaintiff stated that her "severe anxiety problem" was controlled to some extent by Clonazepam. (AR 497.) During the appointment, Plaintiff was not in acute distress, she had no issues with her appearance, she was oriented to person, place, and time, and she had a normal memory, thought process, attention span, judgment and insight, and mood and affect. (AR 498.)

During a July 9, 2015 examination for her eyes, Plaintiff stated that she has no psychiatric issues. (AR 501.) She was oriented as to time, place, and person and she had an appropriate mood and affect. (AR 501.)

The Court finds that substantial evidence supports the ALJ's finding that the record as a whole is consistent with Dr. Murillo and Dr. Ikawa's opinions that Plaintiff does not have a severe mental impairment. Therefore, the Court finds that there is substantial evidence supporting the ALJ's decision to give great weight to the opinions of Dr. Murillo and Dr. Ikawa.

Thus, the Court finds that the ALJ's determination that Plaintiff's mental condition was not severe is supported by substantial evidence. The ALJ did not err in finding that Plaintiff's mental impairments were not severe within the meaning of the Social Security Act through the date of last insured.

## B. The ALJ was Not Required to Further Develop the Record

Plaintiff argues that the ALJ failed to properly develop the record. Plaintiff asserts that the ALJ should have consulted an additional medical advisor or obtained a more recent consultative examination. Defendant counters that it is Plaintiff's burden to establish disability, and that even if the ALJ had a duty to develop the record further, she discharged that duty when she left the record open for Plaintiff's attorney to submit further records.

When applying for disability benefits, the claimant has the duty to prove that she is disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Further, the ALJ's duty to fully develop the record is heightened where the claimant may be mentally disabled and, therefore, unable to protect her own interests. Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992).

The Commissioner has broad latitude in whether to order a consultative examination and the government is not required to bear the expense for an examination of every claimant. Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001). There are cases in which a consultative examination would be required, "including those in which additional evidence needed is not

contained in the records of the claimant's medical sources, and those involving an ambiguity or insufficiency in the evidence that must be resolved." Reed, 270 F.3d at 842 (internal punctuation and citations omitted). A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011).

Viewing the record as a whole, the Court finds that the ALJ did not err by rendering a decision without ordering a consultative examination of Plaintiff's mental health. The record contains information regarding Plaintiff's medications, mental status examinations with a psychiatrist, mental examination findings during visits for other medical conditions, and the statements by Plaintiff and her mother regarding Plaintiff's abilities. The record does not indicate that the ALJ or any medical provider found that the evidence was insufficient to make a determination. The facts in this case are not similar to other instances in which the ALJ was found to have a duty to further develop the record. See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to determine if claimants benefits were property terminated or should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).

The ALJ did not determine that additional examination or information was needed to make her decision. There is substantial evidence to support the ALJ's decision that Plaintiff's mental impairment is non-severe. As stated above, Plaintiff was already taking Adderall and there was an indication of Plaintiff's mental impairments at the time Dr. Murillo and Dr. Ikawa reviewed the records and gave their opinions. The two visits with Dr. Beber in 2015 and the other evidence in the record after Dr. Murillo and Dr. Ikawa's gave their opinions do not call into question the opinions of Dr. Murillo and Dr. Ikawa. It is not this Court's function to second

guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. Therefore, the Court finds that the ALJ did not err by not further developing the record regarding Plaintiff's mental impairments.

## V.

### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff's mental impairments are non-severe at step two and by not further developing the record as to Plaintiff's mental impairments.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Courtney Erin Harrison Campbell. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **February 16, 2018**

UNITED STATES MAGISTRATE JUDGE